**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Mohamed Elhaouat | : CIVIL ACTION |
| | : |
| v. | : 07-632 |
| | : |
| Robert S. Mueller Director, Federal | : |
| Bureau of Investigations, Michael | : |
| Chertoff Secretary, Department of | : |
| Homeland Security, Emilio Gonzalez | : |
| Director, U.S. Citizen and | : |
| Immigration Services et. al. | : |

Joyner, J.                                              August 9, 2007

<u>**MEMORANDUM AND ORDER**</u>

Presently before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (Doc. No. 4).  For the reasons below, the Court **DENIES** Defendants' motion.

**Background**

Plaintiff Mohamed Elhaouat ("Elhaouat") is a citizen of Morocco.  <u>See</u> Compl. at ¶ 1.  He has been, however, a lawful permanent resident of the United States since May 23, 1999.  <u>See id.</u> at ¶ 13.  And since May 17, 2004, he has tried to become a citizen of the United States.  That day, Elhaouat filed a N-400 application for naturalization.  <u>See id.</u>  Now more than three years later, his application is still pending.  Because the agencies entrusted with processing his application do not afford someone in Elhaouat's position any formal means (i.e., administrative recourse) to redress the inaction regarding his application, he filed suit in this Court to force the matter.  He

has sued several governmental defendants for alleged violations of the Administrative Procedure Act ("APA") because of their (and specifically the U.S. Citizen and Immigration Services' ("CIS")) failure to process his N-400 application for naturalization. See id. at ¶¶ 1-6, 19.

Elhaouat contends that the Government's failure to "decide" his application in a "timely and efficient manner" violates: (1) 8 U.S.C. § 1447(b) (Count I); (2) Section 706(1) (5 U.S.C. § 706(1)) of the APA (Count II); and (3) "28 U.S.C. § 1361, under the law of Mandamus" (Count III). See Compl. at ¶¶ 16, 19, 24. He asks this Court to issue either (1) a declaratory judgment or (2) a writ of mandamus requiring the CIS to make a decision on his N-400 application. See id. at 1. Elhaouat maintains the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 701, et. seq., and 28 U.S.C. § 1361. See Compl. at ¶ 8. Defendants have moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The Government argues that the Court does not have subject matter jurisdiction because: (1) Plaintiff's claim under 8 U.S.C. § 1447(b) applies only to applicants who have already participated in a mandatory interview with an examiner authorized to grant or deny the application and (2) the Court can only

exercise jurisdiction pursuant to the APA and/or mandamus statute
when an agency has failed to take an action it is legally
required to take, and the time frame for processing an
application, like Elhaouat's, rests solely with the discretion of
the government agencies. <u>See</u> D. Memo. at 4-11.[1]

### Discussion

In considering a Rule 12(b)(1) motion, the court applies the
same standard as on a Rule(12)(b)(6) motion to dismiss. <u>See,
e.g.,</u> <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884,
891 (3d Cir. 1977).  A defendant may wage either a facial or
factual challenge on the court's subject matter jurisdiction. <u>See</u>
<u>Gould Elec. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir.
2000).  To withstand a facial challenge (as in this case)
requires little of the plaintiff and permits little inquiry by a
court; a plaintiff need only point to the allegations in her
complaint that relate to subject matter jurisdiction.  And as a
general rule, the district court must accept as true these
allegations.

As an initial matter, the Court must decide whether the
Immigration and Naturalization Act's ("INA") jurisdiction-
stripping provision, 8 U.S.C. § 1252(a)(2)(B)(ii) ("Section

---

[1]  All page references for Defendants' memorandum are to those at the top
of the electronically filed version.

1252(a)(2)(B)(ii)"), divests this Court of jurisdiction.[2]

Section 1252(a)(2)(B)(ii) provides, in relevant part:

> no court shall have jurisdiction to review—
> any other *decision or action* of the Attorney
> General or the Secretary of Homeland Security
> the *authority* for which is *specified under
> this title to be in the discretion* of the
> Attorney General or the Secretary of Homeland
> Security, other than the granting of relief
> under section 208(a) [8 U.S.C. § 1158(a)]
> (emphasis added)

Whether this provision strips the Court of jurisdiction in a case
like this is not a matter of first impression.  The Court
benefits greatly from the opinions of other district courts that
have considered the issue.  Having reviewed opinions on both
sides of this issue, the Court will follow those courts that have
held that Section 1252(a)(2)(B)(ii) does not divest the district
courts of jurisdiction when a naturalization (or adjustment of
status) applicant files suit complaining of unreasonable delays
on the part of the CIS and/or FBI. See, e.g., Duan v. Zamberry,

---

[2] In this case, the Government has not argued that this provision deprives
the Court of jurisdiction.  But it has taken that position in similar
cases with mixed results. Compare Safadi v. Howard, 466 F. Supp. 2d 696,
699-700 (E.D. Va. 2006) (concluding that Section 1252(a)(2)(B)(ii)
deprives a court of jurisdiction to review the process employed (including
timing of) to reach adjustment of status decision because that is an
"action" within the meaning of the statutory provision) with Duan v.
Zamberry, 06-1351, 2007 U.S. Dist. LEXIS 12697, at *5-9 (W.D. Pa. Feb. 23,
2007) (rejecting that this provision stripped it of subject matter
jurisdiction).  That the Government chose not to argue that Section
1252(a)(2)(B)(ii) strips this Court of jurisdiction is of little import,
however, as the Court has a continuing obligation to assure itself of its
subject matter jurisdiction. See, e.g., Employers Ins. of Wausau v. Crown
Cork & Seal Co., Inc., 905 F.2d 42, 45 (3d Cir. 1990) (citations omitted).

06-1351, 2007 U.S. Dist. LEXIS 12697, at *5-9 (E.D. Pa. Feb. 23, 2007); <u>Fu v. Gonzales</u>, 07-0207, 2007 U.S. Dist. LEXIS 39623, at *14-19 (N.D. Cal. May 17, 2007).

The reasoning these court have offered for retaining jurisdiction is persuasive and straightforward.  *First*, they have noted that jurisdiction-stripping language in Section 1252(a)(2)(B)(ii) does not apply to "'all decisions the Attorney General [or Secretary of Homeland Security] is entitled to make, but a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's [or Secretary of Homeland Security's] discretion.'" <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697, at *6 (quoting <u>Alaka v. AG of the United States</u>, 456 F.3d 88, 95 (3d Cir. 2006); <u>see also</u> <u>Khan v. U.S.</u>, 448 F.3d 226, 233 (3d Cir. 2006) (specify means to "state explicitly or in detail"); <u>Ahmed v. Gonzales</u>, 447 F.3d 433, 436 (5th Cir. 2006); <u>Spencer Enterprises. v. United States</u>, 345 F.3d 683, 689 (9th Cir. 2003) (citation omitted).[3]  Because Congress has not specified "any discretion associated with[] the pace of application processing,"

---

[3]   In *Spencer Enterprises* the Government in fact argued that because "the decision to issue an immigrant investor visa is not *specified under* [8 U.S.C. §§ 1151-1378] to be in the discretion of the Attorney General . . . 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude federal court review of such a decision." 345 F.3d at 689 (emphasis added, internal citations and quotation marks omitted).  That position is virtually indistinguishable from the Third Circuit's interpretation of Section 1252(a)(2)(B)(ii).

the jurisdiction-stripping provision by its very terms does not apply. See Duan, 2007 U.S. Dist. LEXIS 12697, at *7.  *And second*, they have observed that "the plain language of the provision . . . addresses 'decision or action' on immigration matters, not inaction" as in the case of Elhaouat's application. Fu, 2007 U.S. Dist. LEXIS 39623, at *16 (citing Iddir v. INS, 301 F.3d 492, 497 (7th Cir. 2002) ("Section 1252(a)(2)(B) . . . only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections [of the INA].") (citing Paunescu v. INS, 75 F. Supp. 2d 896, 899-902 (N.D. Ill. 1999).  In other words, an agency hasn't taken a discretionary action (or made a discretionary decision) by not acting.[4]

---

[4]    The *Safadi* decision from the Eastern District of Virginia offers the most developed analysis for the conclusion that Section 1252(a)(2)(B)(ii) strips district courts of jurisdiction in situations like that faced by Elhaouat.  The Court briefly discusses why it declines to follow *Safadi*.

*Safadi*'s analysis began by defining the word "action."  The court observed (citing Black's Law) that the word "action" means "an act or series of acts."  And so, for the purposes of the statutory provision, an "action" must encompass "*any* act or series of acts that are discretionary within the adjustment of status [(or naturalization)] process." 466 F. Supp. 2d at 699 (emphasis in original).  From there, the court next observed that there were no statutory limitations on the CIS's discretionary authority over the adjustment of status process. See id. Thus, combining its definition of action with the absence of statutory limitations on the agency's authority, *Safadi* concluded that the word action, as used in Section 1252(a)(2)(B)(ii), must encompass "the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." Id. (emphasis in original).  Section 1252(a)(2)(B)(ii) therefore does not refer to only the CIS' *final* action (or decision) to either grant or deny an application, but includes all those intermediary "actions" that preceded it.  And included among those intermediary actions is the "action" of deciding how long the process will take.  Despite this conclusion, however, *Safadi* went on to note that a district court might

* * * * *

Having concluded that Section 1252(a)(2)(B)(ii) does not

strip this Court of subject matter jurisdiction, the Court next

---

**_nevertheless have jurisdiction_** if the CIS "refused altogether to process
an . . . application or where the delay was so unreasonable _as to be
tantamount to a refusal_ to process the application." Id. at 700 (emphasis
and bold added).

A number of courts have already observed that it is impossible to
reconcile this last statement with _Safadi's_ principal holding that Section
1252(a)(2(B)(ii) strips the district courts of jurisdiction in cases in
which an adjustment of status (or naturalization) applicant complains of
unreasonable delays. The processing of an application is either an action
or it isn't. But it can't be an action in some cases but not in others.
Cf. Duan, 2007 U.S. Dist. 12697, at *8-9 ("This disclaimer, however,
raises the question of how an unreasonable delay might not qualify as an
'action' . . . while a reasonable delay unambiguously does constitute
'action.'). Its internal inconsistency aside, the Court finds _Safadi_
unpersuasive for other reasons.

_First_, the decision simply ignores that the APA requires that any
matter presented to an agency must be decided within a reasonable period
of time. See 5 U.S.C. § 555(b). And so it's not particularly relevant
that neither the INA nor any regulations promulgated thereunder fail to
set forth specific timing deadlines for the CIS to process adjustment of
status or naturalization or any other immigration-related applications
over which it has administrative authority. That's because the CIS'
activities must still conform to the APA - including its general provision
requiring agencies to conclude matters before them in a reasonable amount
of time. The Court can locate no language in the INA which makes 5 U.S.C.
§ 555(b) inapplicable to the CIS.

_Second_, the Court is not convinced that _Safadi_ properly defined the
word "action." "Action" is not defined by the INA. See 8 U.S.C. § 1101
(definitions section). And so starting with a dictionary to define the
word is not altogether surprising. The Court believes, however, that the
better approach is to interpret "action" vis-à-vis the APA. Section 704
(5 U.S.C. § 704) of the APA limits judicial review to final agency
actions. Indeed, the provision could not be more explicit: "[a]
preliminary, procedural, or intermediate agency action or ruling [is] not
directly reviewable . . . ." 5 U.S.C. § 704. In light of this limitation
on judicial review of agency action, it makes little sense to read Section
1252(a)(2)(B)(ii) as eliminating jurisdiction that never existed (this
provision was added to the immigration code as part of the Illegal
Immigration Reform and Immigrant Act of 1996). The federal courts have
never had jurisdiction to review "non-final agency actions." Thus, the
word "action" in Section 1252(a)(2)(B)(ii) is better understood to refer
to only "final agency actions."

-7-

considers whether Elhaouat states a claim under the APA.[5]  The

APA authorizes suits by any "person suffering legal wrong because

of agency action . . . ." 5 U.S.C. § 702 ("Section 702").  Agency

action is defined to include "the whole or a part of an agency

---

[5]     The APA does not provide an independent basis for federal
jurisdiction.  See Califano v. Sanders, 430 U.S. 99, 107 (1977) ("[T]he APA
does not afford an implied grant of subject-matter jurisdiction permitting
federal judicial review of agency action.").  Rather, the jurisdictional
basis for an APA claim is the federal question statute, 28 U.S.C. § 1331.
See, e.g., Kim v. Ashcroft, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004).  The
Court therefore admits to some confusion with the Government (as well as
numerous other courts) framing the issue of whether a court can compel
agency action with respect to the processing of naturalization
applications (or others of a similar nature) in terms of subject matter
jurisdiction.  Without a doubt a claim under the APA raises a federal
question.  And so the issue is not whether the Court has subject matter
jurisdiction to entertain a claim, but rather whether a plaintiff has in
fact stated a claim under the applicable provision of the APA.  If this is
not so, how does one explain the following example: Tom sues a
municipality's police department and several of its officers under Section
1983 (42 U.S.C. § 1983) after they use (from his perspective) unlawful and
unreasonable force to detain him.  In his complaint, Tom alleges that the
officers' actions violated his Eighth Amendment rights; the argument being
that his detainment amounted to cruel and unusual punishment.  The problem
for Tom is that the Supreme Court has long held that officers' actions
during a pre-trial seizure (as in his case) are not governed by the Eighth
Amendment.  See, e.g., City of Revere v. Massachusetts General Hosp., 463
U.S. 239, 245 (1983) (citing Ingraham v. Wright, 430 U.S. 651, 671-72 n.40
(1977)).  And so even if everything in Tom's complaint were true, a court
simply could not grant him relief.  But when the municipality moves to
dismiss Tom's claim, it doesn't argue that a court lacks subject matter
jurisdiction because the court is unable to grant the relief Tom desires.
Rather, as anyone familiar with civil rights litigation knows, the
municipality files a motion to dismiss pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure (or perhaps a motion for judgment on the
pleadings pursuant to Rule 12(b)(3)). The sole issue is whether Tom states
a cognizable Section 1983 claim, not whether there is a jurisdictional
basis for a court to entertain it.  Likewise here, the lone issue is
whether Elhaouat's allegations state a claim under the APA.  In the
Court's view, the proper way to frame the matter before it is in terms of
a motion to dismiss for failure to state a claim, rather than a motion to
dismiss for lack of subject matter jurisdiction.  In the end, however,
there is no practical effect how the Court treats Defendants' motion – the
same standard applies and a motion under either Rule 12(b)(6) or 12(b)(1)
can be raised at any time.

rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." 5 U.S.C. § 551(13) (emphasis added).  And when an agency fails to act, the APA provides that "[a] reviewing court shall . . . compel agency action unlawfully withheld *or unreasonably delayed*." 5 U.S.C. § 706(1) ("Section 706(1)") (emphasis added); see also 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").

But simply complaining that an agency failed to act is not enough to bring a claim under Section 706(1).  *First*, the "agency action complained of must be 'final agency action.'" Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 61 (2004) (citing 5 U.S.C. § 704).[6]  And *second*, a plaintiff must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." Norton, 542 U.S. at 64 (emphasis in original); see also id. ("The limitation to discrete agency action precludes . . . broad programmatic attack[s]") (citation omitted).  Thus, under Section 706(1), a court may compel only that agency action which it is legally required to take. See id. at 63.

---

[6]  *Norton* observed that this was only true if there was no other statute that provided a cause of action. See 545 U.S. at 61.

Consequently, an agency's delay in acting "cannot be unreasonable with respect to action that is not required." Id. at 63 n.1.

The Government, citing _Norton_, contends that the time period for adjudicating Elhaouat's  N-400 application is subject to the agency's discretion, and thus outside the purview of Section 706(1). See D. Memo. at 8-9.  In other words, because the Government is not "legally required" to act on his application by any particular date he cannot ask this Court to compel it to do so.  The Court disagrees.

With respect to processing Elhaouat's application, the CIS enjoys some but not unfettered discretion.  For example, the decision to naturalize Elhaouat rests entirely with the discretion of the CIS and Secretary of Homeland Security and is not subject to any form of judicial review. See 8 U.S.C. § 1252(a)(2)(B)(ii).  The CIS also has "discretion" in structuring the application process for naturalization. Cf. Duan, 2007 U.S. Dist. LEXIS 12697, at *7 ("[T]he speed of processing [an application] may be 'discretionary' in the sense that it is determined by choice . . . .").  But its discretion does not extend so far that it may effectively disregard Elhaouat's application and leave him in a state of administrative limbo. Indeed, the CIS' regulations make clear that it has a mandatory, non-discretionary duty to adjudicate such applications:

> Grant or denial. Subject to supervisory
> review, the employee of the Service who
> conducts the examination [on an application
> for naturalization] *shall determine whether
> to grant or deny the application*, and *shall*
> provide reasons for the determination, as
> required under Section 335(d) [(8 U.S.C. §
> 1446)] of the Act.

8 C.F.R. § 316.14(b)(1) (emphasis added).

In light of the APA's general stricture[7] that an agency will

conclude a matter presented to it within a reasonable time with

due regard and necessity for the parties, it is clear that the

CIS has a non-discretionary, mandatory duty to process

naturalization applications within a reasonable period of time.

And that neither Congress nor the agency has specified the time

frame for doing so makes no difference. See, e.g., Pub. Citizen

Health Research Group v. Chao, 314 F.3d 143, 152 (3d Cir. 2005)

(compelling agency to proceed with rulemaking although enabling

legislation set no specific deadline for agency to do so).

When the CIS finally adjudicates Elhaouat's N-400

application that will be a "final agency action."  Nothing more

can happen at the CIS once it decides whether to grant or deny

his application; really it's little more than an up or down

decision.  There's also little question that he is seeking to

compel a "discrete" agency action.  Unlike respondents in *Norton*,

---

[7] See 5 U.S.C. § 555(b).

he is not demanding a "general order[] compelling [the CIS] to
[comply] with broad statutory mandates." 545 U.S. at 66.  Rather,
he is asking the Court to order the CIS to comply with a
"specific statutory command [(8 C.F.R. § 316.4(1))] [which]
requir[es]" it to make a decision. <u>Norton</u>, 545 U.S. at 71.
Finally, as illustrated above, the agency action Elhaouat seeks
is legally required - the CIS <u>*must*</u> adjudicate his application.
Because Elhaouat asserts that the CIS has unreasonably delayed
taking a discrete final agency action which it is required to
take, he states a claim under Section 706(1). <u>Accord</u> <u>Kaplan v.</u>
<u>Chertoff</u>, No. 06-5304, 2007 U.S. Dist. LEXIS 22935, at *73-75
(E.D. Pa. March 29, 2007) (holding that the CIS has a mandatory,
non-discretionary duty to adjudicate naturalization applications
within a reasonable amount of time and citing numerous cases in
support of this position); <u>Fu</u>, 2007 U.S. Dist. LEXIS 39623, at *7
(same); <u>Duan</u>, 2007 U.S. Dist. LEXIS 12697, at *12-13 (same); <u>Song</u>
<u>v. Klapakas</u>, 2007 U.S. Dist. LEXIS 27203, at *9 (E.D. Pa. Apr. 9,
2007) (same);[8] <u>but</u> <u>see</u> <u>Badier v. Gonzales</u>, 475 F. Supp. 2d 1294,

---

[8] Although several of these cases concern applications for adjustment of
status, rather than ones for naturalization, the Government has implicitly
acknowledged that this is a difference without distinction with respect to
the Section 706(1) analysis. <u>See</u> D. Memo. at 10 n.5.  The Court notes,
however, that different sets of regulations govern the application process
for adjustment of status (part 209 of the Title 8 of the Code of Federal
Regulations) and naturalization (part 316 of the Title 8 of the Code of
Federal Regulations).  Several courts have interpreted the provisions
governing the adjustment of status application process (specifically
citing 8 C.F.R. §§ 209.2(f), 103.2(b)(18)) as not imposing a non-

1297 (N.D. Ga. 2006) (CIS has no discrete duty to act because there is "no statutorily established time period" for processing a naturalization application).[9]

To be clear, Elhaouat is only asking the Court to compel Defendants to adjudicate his application within a reasonable amount of time, not to compel them to grant his request for naturalization.  Because that request properly states a claim under Section 706(1) of the APA, the Court will retain jurisdiction over this matter. See <u>Norton</u>, 542 U.S. at 64 ("[Section 706(1)] empowers a court only to compel an agency 'to perform a ministerial or non-discretionary,; or 'to take action

---

discretionary duty to adjudicate such applications. See, e.g., <u>Qiu v. Chertoff</u>, 486 F. Supp. 2d 412, (D.N.J. 2007) (declining mandamus jurisdiction by holding that the CIS does not have a non-discretionary duty to process adjustment of status applications because § 103.2(b)(18) permits a district director to withhold adjudication of a visa petition or other application for six month intervals if certain conditions are satisfied).  The Court disagrees that the ability of the CIS to delay adjudicating an application <u>with cause</u> (as specified, for example, in 8 C.F.R. § 103.2(b)(18)) somehow obviates it of its obligation to ultimately render a decision on an application for naturalization (or any other application for that matter).  The APA <u>requires</u> that all agencies must act on matters before them within a reasonable time. See 5 U.S.C. § 555(b). The agency's regulations are nevertheless relevant in evaluating whether it is in fact processing an application in a reasonable manner.  And so here, the CIS could establish, among other ways, that Elhaouat's application is "reasonably delayed" because it is acting pursuant to § 103.2(b)(18).

[9]  The Government relied principally on <u>Badier</u> in support of its position. See D. Memo. at 9-11.  Because the Court finds that the CIS is legally required to process Elhaouat's application within a reasonable period of time, it declines to follow <u>Badier</u>.  It does note, however, that <u>Badier</u>'s analysis would make it permissible for an agency to never act so long as there was no "statutorily prescribed time frame" for it to do so.  That result makes little sense in light of 5 U.S.C. § 555(b), which requires agencies to act within a "reasonable time" on matters presented to it.

upon a matter, without directing _how_ it shall act.'") (citing Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis in original).[10]  Accordingly, the Court does not address whether jurisdiction alternatively exists under the mandamus statute.[11]

### Conclusion

For the foregoing reasons, the Court concludes that Elhaouat states a claim under the APA.  That, however, is the lone issue which this memorandum opinion addresses.  Because there is no factual record, the Court is unable at this juncture to ascertain whether Elhaouat is entitled to the relief he requests. See, e.g., Oil, Chem., & Atomic Workers Union v. OSHA, 145 F.3d 1120, 1233 (3d Cir. 1998) (the determination of whether CIS has in fact unreasonably delayed processing Elhaouat's application involves a

---

[10] The Court notes that _Norton_ opined that when agency action is to be performed within a certain time period it may be compelled under Section 706(1). See 542 U.S. at 65 (citing 47 U.S.C. § 251(d)(1) which required the FCC to establish certain regulations within six months of the enactment of the Telecommunications Act of 1996).  _Norton_ did not hold, however, that the presence of a specific time frame was _sine qua non_ for a Section 706(1) action.  And as the Court has repeatedly emphasized, imposing such a requirement would effectively nullify the APA's overarching imperative that agencies conclude matters presented to them within a reasonable period of time.

[11]  Finally, the Court holds that Elhaouat does not state a claim under 8 U.S.C. § 1447 ("Section 1447"). See Compl. at ¶ 16.  Section 1447 permits a naturalization applicant to obtain a hearing in federal court if there has not been a naturalization determination made pursuant to 28 U.S.C. § 1446 ("Section 1446") within 120 days of "an examination." See 8 U.S.C. § 1447(b).  Because Elhaouat has not alleged that a Section 1446 examination took place, a hearing in federal court would be premature.

"fact-intensive" balancing that is not possible at this stage of the proceedings).[12]

---

[12]   Moreover, the Court would have to dismiss Elhaouat's claim against the CIS for unreasonable delay in the processing of his application if the FBI's failure to complete his background check is the cause for the delay. See Kaplan, 2007 U.S. Dist. LEXIS 22935, at *81-82.  But absent discovery, the Court cannot determine whether the delay in Elhaouat's case is "attributable" to the CIS or FBI.  Accordingly, it is not proper to dismiss any of the agency defendants at this time.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Mohamed Elhaouat | : CIVIL ACTION |
| | : |
| v. | : 07-632 |
| | : |
| Robert S. Mueller Director, Federal | : |
| Bureau of Investigations, Michael | : |
| Chertoff Secretary, Department of | : |
| Homeland Security, Emilio Gonzalez | : |
| Director, U.S. Citizen and | : |
| Immigration Services et. al. | : |

<u>ORDER</u>

AND NOW, this 9TH  day of August, 2007, the Court **DENIES** Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (Doc. No. 4).  The Court **GRANTS** Plaintiff leave to amend his Complaint and **ORDERS** that an amended complaint be filed by **<u>August 31, 2007</u>**. The Court further **ORDERS** Defendants to file an answer or new motion to dismiss within forty-five (45) days of the filing of Plaintiff's amended complaint.

BY THE COURT:

S/J. CURTIS JOYNER
J. CURTIS JOYNER, J.